IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION


EOD
09/24/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CAMI CHELESE HOBBS** | § | Case No. 10-42736 |
| xxx-xx-6399 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| GINNA ANTHONY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 10-4225 |
| | § | |
| CAMI CHELESE HOBBS | § | |
| a/k/a CAMI KISH | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Ginna Anthony ("Plaintiff") seeking a determination of whether an alleged debt owed to it by the Defendant-Debtor, Cami C. Hobbs ("Hobbs" or "Debtor"), is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiff contends that the debt is non-dischargeable under various subsections of 11 U.S.C. §523(a). After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

# **FINDINGS OF FACT**[2]

1. The Debtor-Defendant, Cami C. Hobbs, has been a realtor in the Denton area for the past eleven (11) years, primarily as a listing agent.[3]

2. In December of 2007, the Defendant was working as an agent for the Real T Team, Inc., when the Plaintiff, Ginna Anthony, contacted her about locating an unimproved residential lot for purchase.

3. Among the Defendant's real estate listings for sellers were two (2) unimproved lots listed for Vanad Singarvelu, the owner of lots in the Lakeview Ranch subdivision in Denton County, Texas.[4]

4. The two Lakeview lots were in the process of being purchased by builder, Don Wiley. Wiley planned on subdividing the property into multiple lots for custom homes and was working with the City of Denton to accomplish this goal prior to the closing on the lots.[5]

5. In January 2008, the Defendant showed the Lakeview lots to the Plaintiff and introduced the Plaintiff to Wiley.

6. Though the agent for Singarvelu, the Defendant did not have a listing agreement with Wiley, nor did she obtain a buyer's representation agreement from the Plaintiff.

7. The Plaintiff subsequently elected to purchase from Wylie Lot 24A-A, Block 11, of the Lakeview Ranch Subdivision, Denton County, Texas, more commonly identified as 459 Lakeview Blvd. in Denton (the "Lakeview Lot").

8. Wiley called the Defendant and requested that she prepare the contract of sale for the lot according to the terms he provided.[6]

---

[2] All stipulated facts were set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on April 18, 2012. The Court will reference only those facts necessary or germane to a decision on this matter.

[3] ¶ 1 of the Agreed Issues of Fact.

[4] ¶ 5 of the Agreed Issues of Fact.

[5] ¶ 6 and ¶ 13 of the Agreed Issues of Fact.

[6] ¶ 8 of the Agreed Issues of Fact.

9. Wiley then gave the contract to the Plaintiff to review.[7]

10. On or around January 19, 2008, the Plaintiff and Wiley signed the Unimproved Property Contract for purchase of the Lakeview Lot for $85,000.[8]

11. The Unimproved Property Contract contained a provision that identified the Defendant as a "Seller's agent" entitled to a 3% commission.[9]

12. Though she claimed that she never knew of this provision, the Plaintiff eventually agreed to the payment of the 3% commission on the purchase of the Lakeview Lot as a matter of fairness since the Defendant first exposed her to the availability of the Lakeview Lot.

13. The Plaintiff closed on the purchase of the Lakeview Lot on May 8, 2008 and paid a commission of $2,550.00 to the Defendant.[10]

14. The Plaintiff proceeded to negotiate with Wylie for the construction of a residence upon the Lakeview Lot.

15. On March 26, 2008, Wiley, as "Builder," and the Plaintiff, as "Homeowner," signed an agreement titled "Custom Home Build"(hereinafter, the "Builder Contract"). The Builder Contract required the Plaintiff to provide permanent and interim financing costs, with the total projected cost of materials and labor for the construction of the home at $325,500.00, with a 15% Builder's Fee, and it provided that construction will begin "immediately upon financing approval."[11]

16. The Defendant was not involved in the negotiations regarding the Builder Contract.[12]

---

[7] ¶ 9 of the Agreed Issues of Fact.

[8] Ex. 1 and ¶ 10 of the Agreed Issues of Fact.

[9] Ex. 1 at p. 8.

[10] ¶ 17 of the Agreed Issues of Fact.

[11] Ex. 2.

[12] ¶ 11 of the Agreed Issues of Fact.

17. The Builder Contract contained no provision for the payment of any commission to Defendant.

18. Upon completion of the construction process, the Plaintiff sought to convert her interim construction loan to permanent residential financing. Closing was set for December 31, 2008 in the offices of Title Resources, a title company.[13]

19. On December 17, 2008, the Defendant sent a "Commission Disbursement Authorization" to Title Resources, claiming entitlement to a 3% commission of $9,780.00 based upon the construction price of the residence under the Builder Contract.[14]

20. Virginia, an escrow officer with Title Resources, subsequently called the Defendant to inform her that the Plaintiff had reviewed the proposed closing statement and had advised Title Resources that she was not going to pay any commission to the Defendant.[15]

21. On or about December 19, 2008, the Defendant signed and filed an "Affidavit of Lien -Original Agent-Individual" claiming a mechanic's or materialman's lien on the real property and improvements constituting the Lakeview Lot.[16]

22. The lien purported to secure payment of an amount of $9,780.00 "for unpaid commission agreed upon at initial meeting with Builder, buyer, and Real Estate Agent."[17]

23. Such act was performed by the Defendant without notice to the Plaintiff.

24. There was no factual or legal basis entitling the Defendant to file a mechanic's lien against the Lakeview Lot.

---

[13] ¶ 18 of the Agreed Issues of Fact.

[14] Ex. 9.

[15] ¶ 19 of the Agreed Issues of Fact.

[16] Ex. 5 and ¶ 22 of the Agreed Issues of Fact.

[17] Ex. 5.

25. There was no oral agreement by the Plaintiff arising from any "kitchen discourse" under which the Plaintiff agreed to pay a commission to the Defendant arising from the building of the residence upon the Lakeview Lot.

26. There was no other agreement by the Plaintiff, written or oral, under which she agreed to pay a commission to the Defendant arising from the building of the residence upon the Lakeview Lot.

27. At the time of its filing, the Defendant knew that she possessed no factual basis for the filing of a mechanic's lien against the Lakeview Lot.

28. As a person experienced in real estate transactions, the Defendant was aware that the filing of such a lien could have a harmful effect upon a landowner.

29. Notwithstanding her knowledge that she possessed no factual basis for the filing of a mechanic's lien against the Lakeview Lot and her knowledge of the detrimental effect that the lien filing could cause, the Defendant filed the lien affidavit anyway as a means to coerce the Plaintiff to pay an additional commission that was not actually due and owing.

30. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant constituted a fraudulent lien.

31. The Defendant filed the mechanic's lien affidavit against the Lakeview Lot with knowledge that it was a fraudulent lien.

32. The Defendant intended for the mechanic's lien affidavit against the Lakeview Lot to be given legal effect, evidencing a valid lien or claim against real property.

33. The Defendant intended to cause financial injury to the Plaintiff by the filing of the mechanic's lien affidavit against the Lakeview Lot.

34. The Defendant intentionally inflicted this injury upon the Plaintiff, knowing that a financial injury to the Plaintiff was a natural consequence of the filing of the fraudulent lien, which the Defendant hoped the Plaintiff would mitigate by paying the demanded, but undeserved, commission.

35. In fact, the Defendant was expressly relying upon the infliction of such an intentional injury as a means to coerce the payment of the demanded commission and she called the title company prior to the scheduled closing to ascertain whether her coercion had succeeded.

36. The Defendant filed the mechanic's lien affidavit against the Lakeview Lot with an intent to defraud.

37. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant was a deliberate and intentional act by the Defendant.

38. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant was intentional infliction of an injury by the Defendant.

39. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant was a deliberate and intentional act that was taken by the Defendant with a subjective motive to cause harm to the Plaintiff.

40. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant was a deliberate and intentional act that was taken by the Defendant under circumstances evidencing an objective substantial certainty of harm.

41. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant did, in fact, cause harm to the Plaintiff.

42. When the Plaintiff arrived for the closing on December 31, 2008, she was informed that the Defendant had filed the mechanic's lien against the Lakeview Lot.

43. The December 31 closing could not proceed as scheduled.

44. On December 31, 2008, the Defendant contacted the title company to see if the commission had been paid and learned that the closing had been delayed because of the filing of the lien.

45. On January 7, 2009, the Plaintiff filed a petition before the 367th Judicial District Court of Denton County, Texas, under Miscellaneous Case No. 2009-50005-367 seeking, in part, to have the Defendant's purported lien declared invalid pursuant to the ex parte procedures authorized under §51.903 of the Texas Government Code.[18]

---

[18] ¶ 24 of the Agreed Issues of Fact. Section 51.903(a) of the Texas Government Code authorizes a person or entity that owns real property, and has reason to believe that another has filed a document purporting to create a lien against that property, to file a motion with the district clerk alleging that the instrument in question is fraudulent, as defined by § 51.901(c), and therefore should not be accorded lien status. TEX. GOV'T CODE §§ 51.901(c), 51.903(a). Section 51.903(c) authorizes a district

46. On January 7, 2009, the 367th Judicial District Court entered an order invalidating the lien. Its order specifically provided that:

> "upon review of the documentation or instrument ... the documentation or instrument attached to the motion [i.e., the lien affidavit] is NOT created by implied or express consent or agreement of the obligor, debtor or the owner of the real or personal property ... or by implied or express consent or agreement of an agent, fiduciary or other representative of that person."[19]

47. Upon providing her lender and the title company with a certified copy of the 367th Judicial District Court's order, the Plaintiff was able to proceed to the closing on her conversion of her interim construction loan to permanent residential financing on January 7, 2009.

48. On May 4, 2010, during the mediation of claims asserted in a subsequent state court lawsuit brought by the Plaintiff against the Defendant,[20] the Defendant filed a Release of Mechanic's Lien in the Denton County deed records.[21]

49. On August 17, 2010, prior to any judgment in the state court lawsuit, the Defendant filed a voluntary petition in this Court seeking relief under Chapter 7 of the Bankruptcy Code.

50. The Plaintiff suffered damages as a result of the filing of the fraudulent mechanic's lien affidavit against the Lakeview Lot by the Defendant.

---

judge with jurisdiction to rule on the motion. TEX. GOV'T CODE § 51.903(c). In doing so, the judge may make his or her determination based on a review of the instrument itself, without the benefit of testimonial evidence. *See, e.g., In re Purported Liens or Claims Against Samshi Homes, L.L.C.,* 321 S.W.3d 665, 666 (Tex. App. – Houston [14th Dist.] 2010, no pet.)

[19] Ex. 6 - "Judicial Finding of Fact and Conclusion of Law Regarding a Documentation or Instrument Purporting to Create a Lien or Claim."

[20] See Ex. 11.

[21] Ex. 7.

51. The Plaintiff is an injured person as contemplated under TEX. CIV. PRAC. & REM. CODE §12.002(b).

52. The Plaintiff suffered damages of $500 in additional moving expenses and $714 in additional interest payments that would not otherwise have been incurred but for the Defendant's filing of the fraudulent lien.

53. The Plaintiff has failed to demonstrate, by a preponderance of the evidence, that she would have been approved to participate in, and would have subsequently obtained a reduction of her mortgage debt from, the Home Affordable Modification Program ("HAMP"),[22] but for the Defendant's filing of the fraudulent lien. Such circumstances as established by the evidence are too speculative to serve as the basis for an award of damages.

54. The Plaintiff has failed to demonstrate, by a preponderance of the evidence, that the Defendant's filing of the fraudulent lien was an action so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and would otherwise be regarded as atrocious and utterly intolerable in a civilized community.

55. The Plaintiff has failed to demonstrate, by a preponderance of the evidence, that she suffered severe emotional distress arising from the Defendant's filing of the fraudulent lien.

56. The Plaintiff is entitled to recover from the Defendant the $10,000 statutory damage award authorized under TEX. CIV. PRAC. & REM. CODE §12.002(b)(1).

57. The cumulative amount of actual damages suffered by the Plaintiff as a result of the Defendant's filing of the fraudulent lien is less than the $10,000 statutory damage award authorized under TEX. CIV. PRAC. & REM. CODE §12.002(b)(1).

58. The Plaintiff incurred court costs of $250 in the prosecution of this proceeding.

59. The Plaintiff incurred reasonable attorney's fees in the prosecution of her claim against the Defendant in both the state court proceeding and this adversary proceeding.

---

[22] HAMP is a program established by the U.S. Department of the Treasury, the Federal Housing Finance Agency, Fannie Mae, and Freddie Mac, pursuant to the authority provided in the Emergency Economic Stabilization Act of 2008.

60. The services rendered by the attorneys at Marchand & Moraine, L.L.P. in the prosecution of the Plaintiff's claims were reasonable and necessary, and the hourly rates charged by such attorneys are equal to or below that routinely charged by counsel of comparable skill and expertise on comparable matters.

61. The sum of $26,118.75 constitutes a reasonable attorney's fee for the services rendered by the Plaintiff's lawyers in the prosecution of the Plaintiff's claim against the Defendant, plus the reimbursement of accrued expenses in the amount of $901.70, for a total award of $27,020.45.

62. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

*Jurisdiction and Allocation of Judicial Power*

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding under 28 U.S.C. §157(b)(2)(I) and (O).

3. This Court has the authority to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case. *Morrison v. Western Builders (In re Morrison)*, 555 F.3d 473, 478–79 (5th Cir. 2009).

4. Such authority recognized by the Fifth Circuit is consistent with decisions of sister courts of appeal. *See, e.g., Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017–18 (9th Cir.1997); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir.1993); *Abramowitz v. Palmer*, 999 F.2d 1274 (8th Cir.1993); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir.1991).

5. The recognized authority of a bankruptcy court to enter a final judgment on an unliquidated claim when determining the dischargeability of that debt in a bankruptcy case was not impaired by the decision in *Stern v. Marshall*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). *Farooqi v. Carroll (In re Carroll)*,

        464 B.R. 293, 312 -313 (Bankr. N.D. Tex. 2011)[23]; *Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011)[24].

6.    Even if *Stern* had arguably impacted that authority [which it did not]:,

> the court would be compelled to follow existing Fifth Circuit precedent as set out in *Morrison* ... as this court cannot ignore (much less 'overrule') existing binding circuit precedent, even if that precedent is thought to be inconsistent with a later decision by the Supreme Court. Only the circuit itself can overrule its own precedents.

    *Christian v. Kim (In re Soo Bin Kim)*, 2011 WL 2708985, at *2 n. 2 (Bankr. W.D. Tex., July 11, 2011), as cited in *Carroll*, 464 B.R. at 313 and *Dietz v. Ford (In re Deitz)*, 469 B.R. 11, 21 (B.A.P. 9th Cir. 2012).

7.    The Plaintiff's Complaint seeks a determination that the debt which it alleges is owed to it should be excepted from discharge under various subsections of §523(a).

8.    In seeking such an exception to the Debtor's discharge, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

9.    All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[25] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).[26]

---

[23] "Stern does not hold, directly or indirectly, that an Article I tribunal is without the Constitutional authority to liquidate a creditor's claim against a debtor through entry of a final dollar judgment and then determine whether that judgment is dischargeable in the debtor's bankruptcy case." *Carroll*, 464 B.R. at 313.

[24] "Stern left intact the authority of a bankruptcy judge to fully adjudge a creditor's claim. In this case, the claim was an adversary proceeding against debtor to bar dischargeability of a debt due to Plaintiff. Therefore, the authority to enter a final dollar judgment as part of the adjudication of nondischargeability, as recognized in Hallahan, was not impaired by Stern." *Boricich,* 464 B.R. at 337.

[25] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

[26] However, the Fifth Circuit has noted that there are limits to the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor, particularly in situations falling under

*Liability under §12.002*

10. §12.002 of the Texas Civil Practice and Remedies Code provides:

    (a) A person may not make, present, or use a document or other record with:

    (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

    (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

    (3) intent to cause another person to suffer:

        (A) physical injury;

        (B) financial injury; or

        (C) mental anguish or emotional distress.

    TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a) (Vernon Supp. 2012).

11. "One of the essential elements of a Section 12.002 claim is that the defendant used a document or record despite knowing that it reflected a fraudulent lien or claim against real property." *Salomon v. Lesay,* 369 S.W.3d 540, 549 (Tex. App .– Houston [1st Dist.] 2012, no pet.).

12. The Plaintiff has standing as the owner of the affected real property to pursue a claim under Chapter 12 for the filing of a fraudulent lien or claim against her real property. TEX. CIV. PRAC. & REM. CODE ANN. § 12.003(a)(8) (Vernon Supp. 2012).

---

an exception to dischargeability in a case in which a debtor has committed fraud. *See generally Deodati v. M.M. Winkler & Associates (In the Matter of: M.M. Winkler & Associates),* 239 F.3d 746, 751 (5th Cir. 2001).

13. To establish a violation of Chapter 12, the Plaintiff must demonstrate that the Defendant: (1) made, presented, or filed the lien affidavit with knowledge that it was a fraudulent claim against real property; (2) intended the lien affidavit to be given legal effect; and (3) intended to cause financial injury to the Plaintiff. *Witt v. Chesapeake Exploration, L.L.C.,* 276 F.R.D. 458, 470 (E.D. Tex. 2011); *Walker & Associates Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.– Texarkana 2010, no pet.).

14. "In the context of Section 12.002(a)(3), Texas courts have interpreted the intent element to require only that the person filing the fraudulent lien be aware of the harmful effect that filing such a lien could have on a landowner." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 689 (S.D. Tex. 2010) (internal quotations omitted) (*citing Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 531-32 (Tex. App. – Fort Worth 2005, no pet.).

15. A party asserting a claim under the fraudulent document statute has the burden to prove the requisite elements of the statute. *Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 46 (Tex. App.– Houston [1st Dist.] 2011, no pet.) Intent to defraud is not susceptible to direct proof; therefore, "it invariably must be proven by circumstantial evidence." *Id., citing Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432, 435 (Tex.1986).

16. A party who satisfies the requirements of §12.002(a) may recover statutory damages of $10,000 <u>or</u> the actual damages caused by the violation, whichever is greater, in addition to court costs, reasonable attorney's fees, and exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(b).

17. The statutory damages available under the Texas fraudulent document statute are of a generally compensatory nature, even if not designed to compensate for any particular, actual harm suffered by the individual named in a fraudulent lien. They are designed to compensate for public harms arising from the intentional misuse of the lien filing system. As the Fifth Circuit has recently observed,

> The public harms compensated by statutory damages are especially easy to see in the context of Chapter 12. The filing of fraudulent liens undermines the reliability of the public records system on which so many rely, including land owners, purchasers, local governments, title companies, insurers, and realtors. Fraudulent liens increase transaction costs for all market participants, even if harm to particular individuals is not readily discernable. As the Legislature has found,

       fraudulent liens have "clogged the channels of commerce."

*Vanderbilt Mortg. and Finance, Inc. v. Flores*, 2012 WL 3600853, at *11 (5th Cir., Aug. 23, 2012).

18. Thus, in light of the statutory damage provision, the Plaintiff need not show actual damages in order to recover under Chapter 12 of the Texas Practice and Remedies Code. *Id*. at *10.

19. Further, such a claim to statutory damages is not mooted even though a defendant unilaterally releases an allegedly fraudulent lien after the claim was filed but before trial or final judgment. *Id*. at *9 (citing *Esau v. Robinson*, 2008 WL 2375861, at *1–2 (Tex. App.– Corpus Christi, June 12, 2008, no pet.) and *Meza v. Livingston*, 607 F.3d 392, 399–400 (5th Cir.2010).

20. The Plaintiff is not entitled to recover from the Defendant any damages based upon the effect of the filing of the fraudulent lien by the Defendant upon the Plaintiff's purported entitlement to enjoy the benefits of the Home Affordable Modification Program ("HAMP").

21. To be entitled to a recovery for intentional infliction of emotional distress under Texas law, a plaintiff must generally prove that: (1) a defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (*citing Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999).

22. For conduct to be considered "extreme and outrageous" so as to warrant recovery of damages for intentional infliction of emotional distress under Texas law, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 217 (*citing Mattix-Hill v. Reck,* 923 S.W.2d 596, 597 (Tex. 1996).

23. The Plaintiff is not entitled to recover from the Defendant any sums for the intentional infliction of emotional distress.

24. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant violated the provisions of TEX. CIV. PRAC. & REM. CODE §12.002(a).

25. The Defendant is therefore rendered liable to the Plaintiff under the provisions of TEX. CIV. PRAC. & REM. CODE §12.002(b) for the filing of the fraudulent lien.

26. The Plaintiff is entitled to recover from the Defendant the $10,000 statutory damage award authorized under TEX. CIV. PRAC. & REM. CODE §12.002(b)(1).

27. The Plaintiff is entitled to recover court costs from the Defendant in the amount of $250 as authorized under TEX. CIV. PRAC. & REM. CODE §12.002(b)(2).

28. The Plaintiff is entitled to recover an award of reasonable attorney's fees in the amount of $27,020.45 from the Defendant as authorized under TEX. CIV. PRAC. & REM. CODE §12.002(b)(3).

*Nondischargeability Under §523(a)(6): Debt Arising from Willful and Malicious Injury*

29. The Plaintiff contends that the foregoing debt owed to her by the Defendant under Chapter 12 of the Texas Civil Practice & Remedies Code should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon her by the Debtor-Defendant.

30. Section 523(a)(6) of the Bankruptcy Code provides that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

31. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6).

32. The *Geiger* decision requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

33. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances

evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

34. "Injuries covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

35. A claim under §523(a)(6) for willful and malicious injury is established when a debtor inflicts a deliberate injury by filing a fraudulent lien claim that clouds the title of a person's property and interferes with rights pertaining to that ownership. *See Michalski v. Duvall (In re Duvall)*, 2009 WL 3367092, at *6 (Bankr. D. Colo., Oct. 9, 2009).

36. "One who records a document against property, knowing that it is false, intentionally causes harm to the property owner." *Bosworth v. Tem Holdings, LLC (In re Bosworth)*, 2012 WL 603715, at *6 (B.A.P. 9th Cir., Feb. 2, 2012).

37. The filing of the mechanic's lien affidavit against the Lakeview Lot by the Defendant, as an intentional infliction of an injury, constituted a willful and malicious injury to the Plaintiff or her property.

38. A willful and malicious injury arises from the Defendant's knowing and intentional infliction of an injury to the Plaintiff and her property, notwithstanding the fact that, as a violation of the Texas fraudulent document statute, TEX. CIV. PRAC. & REM. CODE §12.001, *et. seq.*, statutory damages may be substituted under the statute in lieu of actual damages arising from the conduct.

39. As has been recognized in other statutory violation contexts, including cases of intentional trademark or copyright infringement, as well as violations of the Federal Communications Act and the Telephone Consumer Protection Act, statutory damages are often provided for categorically harmful activity that may not engender significant actual damages.[27]

---

[27] *Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 WL 7809005, at *9-10 (B.A.P. 9th Cir., Dec. 17, 2009) [trademark infringement]; *Symantec Corp. v. Mann (In re Mann)*, 410 B.R. 43 (Bankr. C.D. Cal. 2009) [copyright and trademark infringement]; *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120 (Bankr. E.D.N.Y. 2007) [copyright infringement]; *DirecTV, Inc. v. Karpinsky (In*

40. The Texas legislature has, through its adoption of Chapter 12 of the Texas Practice and Remedies Code, defined the knowing presentation of a fraudulent lien claim with the requisite intent as categorically harmful behavior that demanded control and warranted the allowance of a private right of action with the allowance of statutory damages as an additional deterrent to prevent such conduct.

41. The fact that TEX. CIV. PRAC. & REM. CODE §12.002(b) authorizes the recovery of amounts established by statute in order to deter the offensive conduct, rather than relying upon proof of direct damages that may be difficult to quantify and minimal in amount, offers no safe harbor from a determination of nondischargeability.

42. "[A]ny liability duly imposed as a direct, but-for result of the defendant's non-dischargeable conduct constitutes a non-dischargeable debt, regardless of whether the liability reflects the actual damages incurred by the plaintiff." *Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 WL 7809005, at *9-10 (B.A.P. 9th Cir., Dec. 17, 2009) *(citing Cohen v. de la Cruz,* 523 U.S. 213, 220 (1998) [affirming as non-dischargeable statutory treble damages].

43. Thus, the liability of the Defendant arising from her violation of the Texas fraudulent document statute, TEX. CIV. PRAC. & REM. CODE §12.001, *et. seq.*, constitutes a debt for willful and malicious injury by the Defendant to another entity or to the property of another entity.

44. With regard to attorney's fees and accrued interest, "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable ..., the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); see also *Cohen,* 523 U.S. at 218.

45. Accordingly, the Plaintiff, Ginna Anthony, shall recover from the Defendant, Cami Chelese Hobbs f/k/a Cami Kish, the sum of $37,270.45, together with post-judgment interest upon such aggregate sum at the current federal post-judgment interest rate of 0.18% until paid. Such indebtedness is declared to be non-

---

*re Karpinsky)*, 328 B.R. 516 (Bankr. E.D. Mich. 2005) [statutory damages for violations of Federal Communications Act]; *Baltimore-Washington Telephone Co. v. Horne (In re Horne)*, Adv. No. 10-4328 (Bankr. E.D. Tex. filed Apr. 11, 2012) (unpublished) [statutory damages under TCPA nondischargeable as willful and malicious injury under §523(a)(6)].

dischargeable pursuant to 11 U.S.C. §523(a)(6).[28]

46. All other relief requested in the Plaintiff's Complaint in the above-referenced adversary proceeding shall be denied.

47. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

48. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 09/24/2012

*Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[28] Accordingly, the Court need not reach the issues and arguments presented with respect to the alleged nondischargeability of this debt under other subsections.